IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DON ICKES, | ) |
| | ) CIVIL ACTION NO.: 3:07-143 |
| Plaintiff, | ) |
| v. | ) JUDGE KIM R. GIBSON |
| | ) |
| TIM FLANAGAN, | ) |
| ROLAND TROMBETTO, | ) |
| COMMONWEALTH OF PENNSYLVANIA, | ) |
| MARCIA CLAAR, PERRY CLAAR, | ) |
| and WILLIAM CLAAR, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION and ORDER OF COURT

GIBSON, J.,

This matter comes before the Court on Plaintiff Don Ickes' motion for summary judgment (Document No. 63)[1] ag ainst the last remaining Defendants,[2] Marcia Claar, Perry Claar,[3] and William Claar. In this rambling and repetitive rant, through the course of 186 detailed paragraphs, Mr. Ickes relays the lengthy history of a "Hatfield-McCoy" feud between himself and his neighbors, the Claars. There are no legal arguments in this motion, nor is it clear on what grounds Plaintiff is seeking summary judgment. In Plaintiff's amended complaint, filed on April

---

[1] The Court construes Plaintiff's document styled as "Affidavit of Don Ickes in Support of the Motion for Summary Judgment Against Marcia Claar, Perry Claar & William Clarr" (Document No. 63) as a Motion for Summary Judgment.

[2] Plaintiff's complaint, commenced in state court and removed to federal jurisdiction on June 14, 2007, asserted six counts for relief predicated upon the actions of two state game officials in the spring of 1999. On March 31, 2008, the Court dismissed the claims against Tim Flanagan, Roland Trombetto, and the Commonwealth of Pennsylvania (Document No. 18).

[3] The Court ordered Marcia Claar to act as a substitute for Defendant, Perry Claar, who is deceased, pursuant to Fed.R.C.P. 25(a) on 4/9/2010 (Document No. 68).

7, 2008 (Document No. 20), Plaintiff raises two claims. Count one is a claim of malicious prosecution against the Claars. Plaintiff asserts that the Claars encouraged state game officials to investigate and prosecute him for scaring away deer during Buck Season with his ultralight airport.

Second, Plaintiff claims a violation of his civil rights by the Claars under 42 U.S.C. § 1983. Plaintiff claims a violation of his rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments. Specifically, Plaintiff alleges that the Claars acting as informants to federal, state, county and municipal authorities were officially oppressive under the color of state law within the meaning of Title 42, §1983 of the Civil Rights Act. Defendants filed a Response to the Motion for Summary Judgment on April 8, 2010, denying these allegations.

Because Plaintiff does not assert on which grounds he is seeking summary judgment, the Court liberally construes the *pro se* complaint and this *pro se* motion, and considers whether summary judgment can be granted for either of the two causes of action raised. Plaintiff does not meet this burden, and this motion is denied.

## FACTS

Plaintiff operates a licensed ultralight airport on his property. Defendants Marcia and Perry Claar, husband and wife, have been neighbors of Mr. Ickes since November of 1989. In July of 1998, Defendant William Claar, son of Marcia and Perry Claar, constructed a home near Plaintiff's property.

Defendants were not too fond of the Ickes ultralight airport. Defendants filed written and oral complaints with the Federal Aviation Administration, the Pennsylvania Bureau of Aviation,

and the Pennsylvania State Police Department alleging interference by Plaintiff of the quiet enjoyment of their property. Specifically, Marcia Claar complained that Plaintiff intentionally roared the plane's engines over her, as well as her son William's, homes.

Defendants also filed a complaint with the Pennsylvania Game Commission, alleging that Plaintiff operated a plane on the first day of the 1998 buck season. Defendants complained that Plaintiff interfered with the taking of game by hunters when Plaintiff's noisy ultralight aircraft scared the deer. On April 2, 1999, Pennsylvania Game Commission Officers, Flanagan and Trombetto, were investigating the Defendant's complaint . Officers Flanagan and Trombetto approached Plaintiff and asked him to produce identification. Plaintiff refused to do so and instructed the officers to direct all questions to his attorney. The officers again requested that Plaintiff identify himself, and Plaintiff again refused.

On May 14, 1999, two citations were issued charging Plaintiff with violation of 34 Pa.C.S. §904, for "[r]esisting or interfering with an officer." On August 5, 1999 a District Justice convicted Plaintiff on the first citation, fining him $800 plus costs, but dismissed the second citation as a continuation of the same offense. Plaintiff appealed the decision to the Pennsylvania Court of Common Pleas, where a judge upheld the conviction and the sentence. On May 24, 2002, Plaintiff's conviction was reversed by the Commonwealth Court, holding that the statute on which Plaintiff was convicted violated the Constitution. *Commonwealth v. Ickes*, 798 A.2d 863 (Pa. Commonwealth 2002). The decision of the Commonwealth Court was affirmed by the Pennsylvania Supreme Court on May 4, 2005. *Commonwealth v. Ickes*, 582 Pa. 561 (2005).

Plaintiff contends that the Claars, acting as informers to the federal, state, county, and municipal authorities, were responsible for his Civil Rights violations.

# ANALYSIS

## I. Summary Judgment Standard

The following standards are applied in ruling upon a motion for summary judgment:

> Summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32, 106 S.Ct. 2548, 2552-57, 91 L.Ed 265 (1986); Fed. R.Civ.P.56(c). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). In deciding a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-movant. *Oritani [Sav. and Loan Ass'n v. Fidelity and Deposit Co.*, 989 F.2d 635, 638].

*Troy Chem. Corp. v. Teamsters Union Local No.* 408, 37 F.3d 123, 125-26 (3d Cir. 1994).

Federal Rule of Civil Procedure 56(c) states in pertinent part that judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The Supreme Court explained this standard as follows:

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *See generally* 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §2725, pp. 93-95 (1983). This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202, 211 (1986).

The Supreme Court also clarified the judge's role in making factual determinations at the summary judgment stage:

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes*, 398 U.S. at 158-159, 90 S.Ct at 1608-1609. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948).

*Id.* at 255, 106 S.Ct. at 2513-14, 91 L.Ed 2d at 216.

The Supreme Court also explained an opponent's burden under Rule 56(c):

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 1356, 89 L.Ed 538, 552 (1986) (internal citations omitted) (footnote omitted).

## II. **Malicious Prosecution**

In his complaint, Plaintiff asserts, somewhat confusingly, that certain criminal proceedings commenced against him in 1999 were malicious prosecutions, as the charging

officer lacked "probable cause to reasonably believe that a cognizable crime had been committed by" Mr. Ickes on 4/2/1999. Amended Complaint p. 6. Further, Plaintiff alleges that "Marcia Claar, her husband (Perry) and son (William) . . . encouraged" this alleged malicious prosecution.

The Court construes Mr. Ickes' claim for malicious prosecution as a claim for the Pennsylvania common law tort of abuse of process. The tort of "abuse of process" is defined as:

> The tort of "abuse of process" is defined as the use of legal process against another primarily to accomplish a purpose for which it is not designed. To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff. This tort differs from that of wrongful use of civil proceedings in that, in the former, the existence of probable cause to employ the particular process for its intended use is immaterial. The gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure. In support of this claim, the [plaintiff] must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process ...; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

*Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa.Super.1998), appeal denied, 556 Pa. 711, 729 A.2d 1130 (1998).

> The gravamen of the misconduct for which the liability stated ... is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly *1239 obtained, constitutes the misconduct for which the liability is imposed....

*Rosen v. American Bank of Rolla*, 426 Pa.Super. 376, 627 A.2d 190, 192 (1993).

Plaintiff has failed to demonstrate that the actions of the Claars were "for any purpose

6

other than that which it was designed to accomplish." *Id.* The Claars' acts of informing state and federal officials of potential violations from the Ickes ultralight airport were appropriate uses of legal processes. Whether these tips resulted in prosecutions for violations is irrelevant for purposes of the tort of abuse of process. The information was provided to the authorities through lawful means. The relevant legal processes were not misused or abused by the Claars. On this ground, summary judgment must be denied.

### III. §1983

42 U.S.C. §1983 provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To establish a claim under Section 1983, Plaintiff must establish that he has been deprived of a right secured by the Constitution or laws of the United States and that the deprivation was committed under color of state law. *Am. Mfg. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999). In other words, the alleged Constitutional violation must be "caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom may fairly be said to be a state actor." *Id.* at 50. *See also Yeager v. City of McGregor*, 980 F.2d 337, 339 (5th Cir. 1993) ("The ultimate issue in a § 1983 case is whether the alleged infringement of federal rights stemmed from conduct fairly attributable to the state.").

Plaintiff alleges that Defendants, acting as informers to the federal, state, county, and municipal authorities, were responsible for his Civil Rights violations. Specifically, Plaintiff

7

alleges that the Defendants' actions—through their state actor allies—violated his First Amendment rights by having him penalized for failure to speak; his Fourth Amendment rights when the officers' prepared citations against him were unsupported by probable cause; his Fifth Amendment rights for having been deprived of due process; his Sixth Amendment rights for having not been advised of the nature and cause of the allegations against him; his Eighth Amendment rights for having an excessive mandatory fine imposed against him for exercising his right not to speak; his Ninth Amendment rights for having violated his unenumerated rights, and his Fourteenth Amendment rights for having been denied equal protection.

Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights. *Baker v. McCollan*, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). To state a Section 1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Under Section 1983, "[t]he traditional definition of acting under color of state law requires that the defendant ... exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). The determination as to whether a non-state party acts under color of state law requires an intensely fact-specific judgment unaided by rigid criteria as to whether particular conduct may be fairly attributed to the state. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001).

Defendants Marcia Claar, Perry Claar, and William Claar, are not and were not state actors, nor did they take action under the color of state law. The Claars simply availed themselves of appropriate channels available to report possible violations of state and federal law. At no time did the defendants possess the requisite authority of state law to become subject to a Section 1983 claim. Neighbors simply prying—reminiscent of Gladys Kravitz's snooping into the magical mischief of Samantha Stevens on the television show *Bewitched*—does not rise to the level of state action, and cannot be characterized as "clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). The Court concludes that summary judgment cannot be granted for this claim. Accordingly, because neither of Plaintiff's claims meet the standard for summary judgment, Plaintiff's motion is DENIED.

AND NOW, this 7th day of March, 2010, **IT IS HEREBY ORDERED** that the Plaintiff Don Ickes' Motion for Summary Judgment, styled as "Affidavit of Don Ickes in Support of the Motion for Summary Judgment Against Marcia Claar, Perry Claar & William Claar," (Document No. 63) is **DENIED**.

BY THE COURT:

**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**